# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO


LINDA ALLEN,

      Plaintiff,

v.                                    No. 14-CV-00059 JCH/RHS

THE CITY OF ALBUQUERQUE,
MAYOR RICHARD J. BERRY,
in his official capacity as Mayor of Albuquerque,

      Defendants.


## PRETRIAL ORDER

This matter is before the Court pursuant to Fed. R. Civ. P. 16. The parties conferred have

and submit the following Pretrial Order.

## I.  APPEARANCES

Attorneys who will try the action:

        For Plaintiff:      Christopher Orton, Esq.
                              Legal Counseling Services
                              12231 Academy Rd. NE
                              #301-304
                              Albuquerque, New Mexico
                              87111

        For Defendants:     Deborah D. Wells, Esq.
                              Kennedy, Moulton & Wells, P.C.
                              2201 San Pedro NE, Bldg. 3, Suite 200
                              Albuquerque, NM 87110
                              (505) 884-7887

## II.  JURISDICTION AND RELIEF SOUGHT

**A.  Subject Matter Jurisdiction.**

1.  **Was this action removed or transferred from another forum?**  X Yes ___ No.

**If yes, was the action removed or transferred?**

___x___ Removed            _____ Transferred

2.  **Is subject matter jurisdiction of this Court contested?**

__X__ Uncontested    _____ Contested    _____ Party contesting

3.  **Asserted basis for jurisdiction.**

__X__ Federal Question _____ Diversity _____ Other

**Statutory Provision(s) Invoked:** 42 U.S.C. §1981, 42 U.S.C. §1983, 42 U.S.C. §2000e.

**Personal Jurisdiction and Venue:**

4.  **Is personal jurisdiction contested?**

__X__ Uncontested _____ Contested

Identify the party contesting personal jurisdiction and basis for objection:   N/A

5.  **Is venue contested?**

__X__ Uncontested _____ Contested   _____ Party contesting

**B.  Are the proper parties before the Court?**

___ Uncontested __X___ Contested

If contested, identify each missing party or improper party and the basis for the contention:

Defendant Mayor Richard J. Berry is named as a defendant in his official capacity as Mayor of

the City of Albuquerque. It is defendants' position that Mayor Berry is not a proper party to this action.

**C. Identify the affirmative relief sought in this action.**

    1. **Plaintiff seeks:**

        (1) Compensatory damages sufficient to compensate for her humiliation, loss of reputation, suffering, emotional distress and other injuries that defendants' wrongful actions have caused;

        (2) Punitive damages sufficient to punish the individual defendants and to deter defendants and others from such malicious and reckless treatment of Plaintiff and others;

        (3) Damages for loss of reputation and career opportunities;

        (4) Attorney's fees and costs.

        (5) Such other relief as this Court deems just and proper.

    2. **Defendants seek:**

        (1) Dismissal of all claims;.

        (2) Attorney's fees and costs;

        (3) Such other relief as this Court deems just and proper.

### III. BRIEF DESCRIPTION OF NATURE OF CLAIMS/DEFENSES.

**Plaintiff's claims:**

In June 1987, Plaintiff Linda Allen was hired by the Defendant as a Data Entry Clerk. Since that time the Plaintiff has worked numerous positions for various departments of the Defendant.

In November 2007 Plaintiff was transferred to a supervisory position in the Accounts Receivable Department. Over the next number of years the Defendant

removed some of Plaintiff's employees, refused to replace other employees, assigned duties outside Plaintiff's job description and refused to give Plaintiff raises while other non-African American's received substantial pay increases and replacement employees.

Additionally Plaintiff was made to change her hours, keep track of her time and had job duties taken away while the other non-African American supervisors were not required to do these activities

The complaint filed by the Plaintiff alleged six counts including Breach of Contract, Race Discrimination, Equal Protection, and Retaliation.

**Defendants' defenses:**

With regard to plaintiff's §1981 claim, plaintiff has no viable cause of action with regard to anything which occurred prior to October 2, 2009. She cannot meet her burden with regard to this claim under the *McDonnell Douglas* framework. Plaintiff suffered no adverse employment action; she cannot establish that her claimed adverse employment actions occurred under circumstances giving rise to an inference of discrimination; defendant City had legitimate, non-discriminatory business reasons for its actions.

With regard to plaintiff's §1983 Equal Protection claim, plaintiff cannot prevail on her class-of-one theory of equal protection because she is a public employee. Additionally, plaintiff cannot meet her burden with regard to this claim. She cannot establish that she was treated differently than non-African American similarly situated employees; she cannot establish that she was subjected to either an adverse employment action or a constitutional deprivation; she

cannot establish that an official policy or custom was the moving force behind any constitutional deprivation.

With regard to plaintiff's Title VII claim of retaliation, there is only one instance which plaintiff can assert, as all others are time barred. With regard to this instance, plaintiff cannot meet her burden under the *McDonnell Douglas* framework. Plaintiff cannot establish that she suffered an adverse action or that a causal nexus exists between her opposition to discrimination and any allegedly adverse action. Additionally, plaintiff's claims against Mayor Berry in his official capacity are improper, as is her breach of contract claim.

## IV. FACTUAL CONTENTIONS UNDERLYING CLAIMS/DEFENSES

**A. Stipulated Factual Contentions.**

The parties are willing to further stipulate to the following facts:

1. Plaintiff was hired by the City of Albuquerque in June, 1987;

2. Plaintiff is African American.

**B. Contested Material Facts.**

**Plaintiff's Contentions**

1. On November 27, 2006, Plaintiff was involuntarily transferred to the Department of Finance & Administrative Services/Accounting Division (DFAS) as an Accountant II. Even though this transfer was considered a promotion with additional duties and requirements, Plaintiff's pay grade and step remained the same.

2. Upon starting the Supervisor's position, the Plaintiff's new department had four clerical employees that were assigned to help the Plaintiff learn the new department and assist in day to day duties.

3. Upon taking over the SAD/AR department, the Plaintiff soon found out that there were no SAD or AR files, there were no written policies or procedures, and there was no one who was able to train the Plaintiff.

4. Over the next couple of months the Plaintiff was asked by her supervisors to do several jobs that were not in her job description and were supposed to be done by other employees who were of higher grade, rank and classification.

5. In January 2007, the Defendant hired Stephanie Yara to be Plaintiff's new supervisor.

6. In September 2007, one of the Plaintiff's clerks was promoted into a different department. Plaintiff immediately asked for a replacement to be hired but the Defendant refused to replace the clerk. At this time the Plaintiff not only had to do her own duties and the outside duties she was assigned, she now had to do the duties of the clerk that had been promoted.

7. In November 2007 the Plaintiff received a job evaluation from Mrs. Yara. As with her previous evaluation, the Plaintiff was told they were using a E15/E16 job description because even though the Plaintiff was an E14 she was doing the duties of an E15/E16 and the E14 job description did not cover all of the jobs the Plaintiff was performing.

8. After the evaluation the Plaintiff started noticing that her supervisor (Yara) was treating her differently than the other supervisors and managers. A couple of these supervisors were Debbie Dombroski (white female) and Gerri Maurino (White/Hispanic female).

9. These and other non-African American supervisors and managers were allowed to change their hours and call in sick without filling out the proper paperwork, any complaints from staff against the Plaintiff were automatically investigated while complaints against other supervisors were discussed with the supervisors first and at time were then dismissed and not

investigated and the Plaintiff could not change her hours even in times of illness while others were allowed to work 4 10 hour days whenever they wanted.

10.   In December 2007 the Plaintiff was again assigned additional tasks including writing the Request for Proposal for the collection contracts that were being used to hire an outside collection agency.  This was the first time the Defendant had used an outside collections agency and the Plaintiff had to do everything from scratch.  Normally these documents are prepared by an E-15 in the purchasing department but they were assigned to the Plaintiff even though she was already doing numerous jobs outside of her classification and grade and that the Plaintiff still had not had her clerk replaced.

11.   In March 2008 the Plaintiff had a second clerk go out on FMLA leave.  This combined with the fact that the first clerk had never been replaced caused the workload to become overwhelming.  When the Plaintiff asked her supervisor to replace the second clerk, Supervisor Yara refused.

12.   In July 2008 the Plaintiff had another clerk retire.  This left the Plaintiff with only one full time clerk and a second that worked very limited hours because of FMLA.

13.   Once again the Plaintiff's request to replace the clerks was denied.  At this point the Plaintiff was responsible for the Accounts Receivable, SAD, Collections for Central ARs, overseeing the Collections Contracts for the entire City, editing the past due DAT accounts, creating workable procedures for the DAT and the lien process for the City, working on the ERP conversion for ARs and editing the entire AR system in preparation for an upcoming conversion.

14. On August 27, 2008 the Plaintiff turned in a reclassification form in order to have her grade and scale changed to match her job duties.

15. In September 2008, the Plaintiff was informed that her only full time clerk was being pulled out of the department to work part time in the Mayor's office on a new project. This left the Plaintiff with two part time clerks to do the work that had formerly been done by four full time employees. Once again the Plaintiff requested but was denied to replace the two open clerk positions and supplement for the two part time clerks.

16. At the same time as the Plaintiff was being assigned extra duties, she found out that all other departments were having their clerks replaced when they quit or retired. In addition in the Purchasing department which was also under Supervisor Yara, clerks were not only being replaced, but extra help was being given when requested.

17. In February 2009, Plaintiff's clerk that was on intermittent FMLA took a position with another department leaving the Plaintiff with only one part time employee. At this point the Plaintiff was responsible for completing all of the department's job duties.

18. On February 11, 2009 Plaintiff again contacted her Supervisor Stephanie Yara and told her she desperately needed clerical help and that she was afraid they would get behind and make mistakes if help was not given.

19. After a meeting on March 23, 2009, supervisor Yara retaliated against the Plaintiff by taking away some of her supervisory duties and requiring her to do low level clerical duties like sorting and batching invoices and stuffing envelopes for mailing. 20. In addition Supervisor Yara then required the Plaintiff to punch in and out on the time clock to prove she was working 40 hours a week, required the Plaintiff to fill out a P30 anytime she left the office and no longer allowed the Plaintiff to make up for time she was out of the office. No other exempt employee was required to do these actions.

21. After the new restrictions were placed on the Plaintiff, she immediately went to her second line supervisor Greg Striklin and made a complaint that Stephanie Yara's actions were racially discriminatory and that she was being subjected to disparate treatment and harassment.

22. Plaintiff then pointed out that as comparison a white female manager (Debbie Dombrowski) was also sick and on FMLA and she was allowed to work less days, have a flexible schedule and was not required to clock in or fill out P30s.

23. In June 2009, Plaintiff had a meeting with Greg Striklin. At this meeting the Plaintiff asked if she was going to get a raise and the reclassification that was requested in the Job reclassification paperwork she had turned in the year before.

24. On July 15, 2009 Plaintiff's Supervisor Yara again yelled and berated the Plaintiff in front of her staff for an issue that was outside of Plaintiff's control. Pursuant to this Plaintiff went to the Union and filled a formal complaint.

25. The union then set up a meeting between an HR representative Tanda, Greg Striklin, Stephanie Yara, Patti the union rep and the Plaintiff. At this meeting it was decided that the Plaintiff would no longer report to Mrs. Yara but instead directly to Greg Striklin. At this point Supervisor Yara stated that they couldn't do that because it would mean that the Plaintiff won. At that time Tanda told the Plaintiff that she would not be getting her open positions filed and that she would just have to "deal with it". Then Tanda told the Plaintiff that she had had problems with her (Plaintiff) before and that if this arrangement didn't work out it would be the Plaintiff's fault.

26. On November 4, 2009 Plaintiff was issued a notice of a pre-determination hearing to address if Plaintiff had forgotten to process some contracts. At the hearing various charges were brought against the Plaintiff by her supervisors. Plaintiff latter determined that some of the

charges brought against her by her supervisors were known to be false but were still brought against her.

27.  On November 30, 2009 Plaintiff was informed that the charges were being upheld against her and that she would be suspended for one week without pay to be held in abeyance for 6 months pending no other infractions are committed by the Plaintiff.

28. On December 3, 2009 Plaintiff sent an email to the DFAS director Lou Hoffman and Greg Striklin stating the discipline was in violation of her FMLA and that it was racially discriminatory as she was being singled out.

29. On December 16, 2009 Plaintiff was informed by Lou Hoffman and Greg Striklin that the discipline was being rescinded.

30. At the end of 2009 Environmental Health employee Danny Navarez received a 42% pay raise.  In January 2010 Plaintiff's three open positions were deleted and three white males were hired into another area (accounting) at higher pay and compensation packages.

31. During the next 10 months every section of the Accounting division was allowed to hire new employees except for Plaintiff's department.

32.  On August 16, 2010 Plaintiff was informed that Stephanie Yara was once again going to be her supervisor.

33.  On September 14th 2010 Supervisor changed Plaintiff's hours from 7am – 4 pm to 8 am – 5 pm.

34. On September 17, 2010 Plaintiff met with Director Lou Hoffman.  At the meeting Plaintiff complained that her Supervisor was once again harassing her, racially discriminating against her and was retaliating against her.  Plaintiff further pointed out that Supervisor Yara was treating the non-African Americans in a much better way including Debbie Dombrowski who

was white. Plaintiff also pointed out that while other supervisors who were not African-American were given raises and allowed to hire staff, she had been blocked from any raises or staff hiring's since 2007. Finally Plaintiff pointed out that Supervisor Yara had allowed anyone in the AP clerical staff to work a flexible schedule if they wanted to. At the end of the meeting Lou Hoffman said he need some time and would look into the situation.

35. Since the meetings with Lou Hoffman Mark Dimenna has received a $10,000 raise, James Dunn received a $5,000 raise and Ray Gabaldon received a $3,000 raise while plaintiff and African American female has been denied a raise.

**Defendants' Contentions**

1. Plaintiff Linda Allen was hired by the City of Albuquerque on June 27, 1987;

2. Plaintiff is African American;

3. On November 17, 2006 plaintiff was administratively transferred by Tanda Meadors. Her rate of pay and job title remained the same;

4. On November 25, 2009, plaintiff was advised by Mark Valenzuela that she would receive a five working day suspension, without pay. That suspension was to be held in abeyance;

5. In December of 2009, Lou Hoffman was appointed Director of Finance for the City of Albuquerque;

6. On December 16, 2009, Mr. Hoffman rescinded plaintiff's scheduled discipline and advised that any references to same would be expunged from her personnel file. Plaintiff, on the following day, acknowledged receipt of Mr. Hoffman's memorandum;

7. On August 13, 2010, Stephanie Yara was appointed Acting Accounting Officer of the Department of Finance;

8.    Ms. Yara was advised by Cindy Jaramillo, Human Resources coordinator for the Department of Finance, that anyone in a "critical position" had to be at work from 8:00-5:00, which are the City's hours of operation .  On September 14, 2010, Ms. Yara sent a memorandum to both plaintiff (Accounts Receivable Supervisor) and Naydene Castaneda (Accounts Payable Supervisor) requiring them to observe these hours and to fill out a P-30 form to account for any time absent, excluding their lunch hours;

9.    On September 17, 2010, Ms. Yara sent an email to Lou Hoffman advising that plaintiff was the only one who had been allowed to work a flexible schedule;

10.    On September 21, 2010, plaintiff informed Ms. Yara that she was leaving at 1:00 for a doctor's appointment;

11.    On September 27, 2010, Ms. Yara requested that plaintiff submit a P-30 (leave) form for the time she had taken off on September 21, 2010, and advised that Mr. Hoffman had confirmed that plaintiff was not exempt from this requirement;

12.    On September 27, 2010, plaintiff sent an email to Ms. Yara stating that her working hours "cannot be changed on someone's whim" and informing Ms. Yara that she would continue to leave work at 4 p.m.;

13.    On September 27, 2010, Ms. Yara and Ms. Jaramillo spoke with plaintiff regarding her refusal to provide the required P-30 form.  Ms. Jaramillo advised that she too was unaware of any special exemption that would allow plaintiff to continue to fail to provide P-30 forms to account for missed time;

14.    On October 1, 2010, plaintiff sent an email indicating that her work schedule was dictated by her medical condition and insisted on "keeping" the "reasonable accommodation" of a 7:00-4:00 schedule;

15.     Although Ms. Yara preferred that both plaintiff and Ms. Casteneda work an 8:00-5:00 schedule because they had a service desk to man, plaintiff was never required to change her schedule from 7:00-4:00;

16.     On October 27, 2010, plaintiff filed a Charge of Discrimination with the EEOC, alleging discrimination on the basis of race, sex, age, disability and equal pay. She alleged that beginning in August, 2010 she had to report her time. Plaintiff amended her Charge by deleting the claims of discrimination on the basis of age and equal pay;

17.     On October 29, 2010, plaintiff filed a Charge of Discrimination with the EEOC, re-adding the claims of discrimination on the basis of age and equal pay she had deleted two days earlier;

18.     On March 10, 2011, plaintiff advised James Snyder, EEOC investigator, that "my ADA issues were addressed by the City of Albuquerque and therefore no further action is required";

19.     On or about June 13, 2011, plaintiff's Supervisor Pamela Berry (now Pamela Fanelli) approved plaintiff's submission for a position classification review;

20.     On August 22, 2011, Vincent Yermal informed plaintiff that her position reclassification would take effect on September 10, 2011. She went from E-14 to M-14, with a pay raise from $19.18/hr to $20.71/hr and a longevity pay increase from $85/pay period to $125/pay period;

21.     On December 21, 2011, Jesse Muniz, plaintiff's manager, provided plaintiff with a draft letter of instruction regarding plaintiff's unacceptable interaction with a City vendor, CreditWatch;

22.     Plaintiff immediately went on vacation after receiving the draft letter of instruction.  Plaintiff  was asked to write a response to the draft letter of instruction but chose not to do so;

23.     On January 9, 2012, plaintiff filed a Charge of Discrimination with the EEOC claiming that, because the NAACP had filed a discrimination lawsuit on December 13, 2011, she was retaliated against when "given a letter of reprimand regarding a vendor I work with" and that "they never spoke with me or gave me a chance to explain and defend myself";

24.     On February 6, 2012, Mr. Muniz sent a clarification memo to plaintiff regarding the draft Letter of Instruction, reiterating that plaintiff's response had been sought regarding the issues set forth in the draft letter and that a decision on the issue had not been reached on December 21, 2011;

25.     On April 20, 2012, Ms. Jaramillo advised that Leola Sena would be administratively transferred to replace Frances Gonzales effective May 7, 2012;

26.     By November 9, 2012, Ms. Sena was experiencing significant problems with plaintiff's supervision.  Ms. Sena requested that a third party be available for her daily meetings with plaintiff and documented some of plaintiff's objectionable behavior:  (1) not allowing Ms. Sena to make any personal calls while plaintiff did so regularly; (2) forbidding Ms. Sena to sit at her desk during the lunch hour; (3) insisting that Ms. Sena always keep objects on her desk in the same positions; (4) hitting Ms. Sena with her purse; (5) slamming the door in Ms. Sena's face; and (6) advising Ms. Sena that she (plaintiff) would not retire until the City paid her off so that she could purchase a home;

27.     That same day, plaintiff demanded a meeting to formally lodge a complaint regarding a non-work related incident involving plaintiff  which had occurred many year

previously, indicating that the situation "clearly violated my right to privacy and could be a Title VII issue";

28.     That same day, plaintiff, Mr. Muniz, Ms. Fanelli and Ms. Jaramillo met.  Plaintiff indicated that she was upset because of an alleged reference by Terri Maestas to the non-work related incident.  Plaintiff claimed that the only way Ms. Maestas could have known about this incident was if Naydene Castenada disclosed it because plaintiff had revealed this information to only Ms. Castenada,  Jesse Muniz and Pamela Fanelli and insisted that this was a violation of her privacy rights.  Upon investigation it became apparent that the incident was common knowledge and had been discussed openly at various potluck gatherings with the Accounts Payable and Accounts Receivable staff  by plaintiff herself;

29.     Plaintiff had also drafted a proposed letter of instruction to Leola Sena, in which she delineated a number of work restrictions plaintiff wished to place upon Ms. Sena.  On November 12, 2012, Mr. Muniz advised plaintiff that he would not be implementing the restrictions plaintiff  sought.  Plaintiff responded by complaining to Ms. Jaramillo that her ability to supervise Ms. Sena was being "taken away";

30.     On November 12, 2012, plaintiff, Ms. Jaramillo, Ms. Fanelli, Mr. Muniz and Ms. Casteneda again met as a followup to the November 9, 2012 meeting.  When asked whether, in contradiction to her earlier statement that she had told only Ms. Castenada,  Mr. Muniz and Ms. Fanelli about the incident, plaintiff had actually openly discussed the matter with "everyone in the AP and AR division,"  plaintiff responded "it doesn't matter how the information got out. . ." Despite the fact that plaintiff's version of events had been discredited, Ms. Castenada apologized, stating that she only wanted everyone to be sensitive to plaintiff;

31.     On January 22, 2013, the Department of Justice issued its Notice of Right to Sue within 90 days on Charges of Discrimination 543-2011-00116 and 543-2011-00129. Plaintiff did not file suit until October 1, 2013;

32.     On January 24, 2013, Ms. Sena complained about another incident with plaintiff. On that same day, Mr. Muniz formally requested mediation between the two;

33.     On January 29, 2013, Ms. Sena alleged that plaintiff's conduct towards her constituted "a hostile work environment";

34.     On February 1, 2013, plaintiff drafted a Notice of Investigation regarding Ms. Sena and notified Mr. Muniz that she did not feel safe in the workplace because of her conflict with Ms. Sena;

35.     Later that day, Mr. Muniz advised plaintiff that he would not be sending plaintiff's draft Notice of Investigation to Ms. Sena and that Ms. Sena would report to a different office (on the 8th floor) until the issue could be resolved via mediation, which was scheduled to commence on February 7, 2013;

36.     On February 5, 2013, a pre-mediation meeting was held with plaintiff, Ms. Sena, Mr. Muniz, Ms. Fanelli and Ms. Jaramillo. In her notes of this meeting, Ms. Sena indicated: "She brings up her race in almost all conversations we have. I believe she feels she is justified in her actions toward me because she has been mistreated due to her race. I don't see any mistreatment toward her. In fact, she is treated with 'kid gloves' because no one wants her anymore upset";

37.     Two mediation sessions occurred. Plaintiff requested "further action" with regard to her allegations against Ms. Sena. On February 21, 2013, Ms. Jaramillo requested from plaintiff  specific facts regarding Ms. Sena's alleged threats. Plaintiff refused to provide the

requested information, claiming that Ms. Jaramillo did not need any such information before taking action against Ms. Sena;

38. On February 27, 2013, Ms. Fanelli and Mr. Muniz met with plaintiff to discuss the latest in plaintiff's series of complaints regarding Ms. Sena. This complaint was that Ms. Sena was folding invoices, apparently against plaintiff's wishes. Plaintiff and Ms. Sena were advised that plaintiff should not be so controlling and that Ms. Sena should not be disrespectful;

39. On August 20, 2013, the Department of Justice issued its Notice of Right to Sue within 90 days with regard to plaintiff's retaliation Charge No. 543-2012-00538;

40. On March 14, 2014, plaintiff sent an email to Ms. Fanelli stating that plaintiff had allegedly seen Ms. Sena asleep at her desk. "If she has an illness–it really needs to be documented. . .otherwise I just have an employee taking a nap at her desk on City time";

41. In response to plaintiff's allegation, Ms. Sena provided a photograph of plaintiff asleep at her desk at 3:00 p.m.;

42. On July 31, 2014, plaintiff sent an email to Ms. Fanelli complaining that she was still having problems with Ms. Sena;

43. That same day, Ms. Fanelli responded that the situation between Ms. Sena and plaintiff had not improved, that Ms. Sena had been moved due to conflict between she and plaintiff and that, in the interest of a less stressful working environment, Ms. Sena would be remaining on the 8th floor. Ms. Fanelli also pointed out that Ms. Sena had apologized cordially to plaintiff regarding some of the work mistakes she had made and went on to advise plaintiff that "People make mistakes";

44.     As plaintiff had so many complaints with regard to Ms. Sena, effective September 8, 2014, Ms. Sena was removed from plaintiff's supervision and replaced that same day by Angel Gonzalez, someone who plaintiff considers a friend.

## V.  APPLICABLE LAW

**A.  Do the parties agree which law controls the action?**

_X_  Yes    _____  No

**If yes, identify the applicable law.**

42 U.S.C. §1981, 42 U.S.C. §1983, 42 U.S.C. §2000e, as well as common law.

## CONTESTED ISSUES OF LAW

**Identify the specific issues of law that are contested.**

1. **Plaintiff:**

(1) Whether Plaintiff's harassment and treatment was motivated in whole or part because of her race?

(2) Whether the proffered reasons for the harassment and discrimination were pretextual and/or not worthy of credence?

2. **Defendants:**

(1) Whether defendants intentionally discriminated against plaintiff on the basis of her race;

(2) Whether plaintiff suffered an adverse employment action;

(3) Whether such adverse employment action occurred under circumstances giving rise to an inference of discrimination;

(4) Whether defendants had legitimate, non-discriminatory business reasons for their actions;

(5) Whether plaintiff can prevail on her class-of-one theory of equal protection because she is a public employee;

(6) Whether defendants intentionally violated plaintiff's constitutional rights under the equal protection clause;

(7) Whether an official policy or custom was the moving force behind any such constitutional violation;

(8) Whether plaintiff was treated differently than non-African American similarly situated employees;

(9) Whether defendants intentionally retaliated against plaintiff for engaging in protected opposition to discrimination;

(10 ) Whether plaintiff engaged in protected opposition to discrimination;

(11)    Whether there is a causal nexus between between plaintiff's protected opposition to discrimination and an adverse employment action;

(12)    Whether plaintiff's claims are timely;

(13) Whether plaintiff states a viable cause of action against defendant Mayor J. Berry is a proper party;

(14) Whether plaintiff states a viable cause of action with regard to her breach   of contract claim.

## VII.  MOTIONS

**A.  Pending Motions (indicate the date filed):**

1.  **Plaintiff:**  None.

**B.  Defendants:**   Defendants' Motion for Summary Judgment was filed on November 6, 2014; Defendants' Motion in Limine regarding Aaron Kaufman, Robert Jones, Hilary Hale and Julita

Pezzano and Daubert Motion regarding Julita Pezzano was filed on November 6, 2014.

**Motions which may be filed:**

1. **Plaintiff:** None anticipated.

2. **Defendants:** Motions in Limine.

## VIII. DISCOVERY

**A. Has discovery been completed?** __x__Yes _____ No

**Are there any discovery matters of which the Court should be aware?** _____Yes

__X__No

## IX. ANTICIPATED WITNESSES

**A. Plaintiff's Witnesses:**

1.  Plaintiff Linda Allen, current employee of Defendant, contact through Plaintiff's counsel. Plaintiff will testify to all pertinent facts outlined in the complaint.

2.  Patty French, Plaintiff's current AFSCME representative, Telephone number (505) 768-2129. Mrs. French will testify to the complaints of the Plaintiff concerning her attempts to get new replacement staff, department transfers, job reassignments, raises and the Defendant's attempts to discipline the Plaintiff. In addition she will testify to the retaliation an employee will suffer if they complain about discrimination and discussions she had with the Plaintiff and others about the discrimination and retaliation.

3.  Gerri Maurino, Former City of Albuquerque employee now with the Water Authority, ABCWUA P.O. Box 1293 Albuquerque, New Mexico 87103-1293, Telephone 768-2500. This witness will testify to Plaintiff's performance, treatment by superiors and attempts for promotion. In addition she will testify to the treatment of the Plaintiff at meetings as opposed to how other non-African American employees were treated.

4.  Carmen Ortiz, FMLA Supervisor for the Defendant, City of Albuquerque (Mayor's office), Telephone 768-3006. This witness will testify to the discriminatory attitude and discriminatory comments made by the Defendant's managers in regards to Plaintiff's FMLA requests. In addition she will testify to what she was told as to the handling of Plaintiff's FMLA requests.

5.  Naydene Castaneda, Former A/P Supervisor/employee of Defendant, City of Albuquerque City-County Building 11th Floor Albuquerque, New Mexico, Telephone (505) 768-3229. This witness will testify to the exclusion of the Plaintiff's, Plaintiff's performance and

treatment.  In addition she will testify to how the Plaintiff was talked about at meetings and by email.

6.      Frances Gonzales, co-worker of Plaintiff/employee of Defendant, City of Albuquerque City-County Building 11th Floor Albuquerque, New Mexico, Telephone (505) 768-3328.  This witness will testify to the exclusion of the Plaintiff from meetings and other work related activities.  In addition she will testify to her and Plaintiff's attempts for promotion and how she and the Plaintiff were treated by management.

7.      Angel Gonzalez co-worker of Plaintiff/employee of Defendant, City of Albuquerque City-County Building 11th Floor Albuquerque, New Mexico, Telephone (505) 768-3461.  This witness is clerical staff for the Defendant's A/P Department who will testify to what was said in the Plaintiff's office, how Plaintiff was treated by her employees, co-workers and supervisors, and the discriminatory treatment of the Plaintiff.

8.      Any witness identified by the Defendants.

9.      Any witness necessary for foundation, impeachment or rebuttal.

10.     Any expert witness subsequently retained and identified by the Defendants.


**B.  Defendants' Witnesses:**

        Defendants may call:

        1.      Plaintiff Linda Allen
                c/o Christopher Orton, Esq.
                12231 Academy Rd., N.E., #301-304
                Albuquerque, NM 87111
                (505) 266-2753

                Ms. Allen is expected to testify about the factual basis for her claims and damages.

        2.      Pamela Fanelli
                c/o Deborah D. Wells, Esq.
                Kennedy, Moulton & Wells, P.C.
                2201 San Pedro N.E., Bldg. 3, Suite 200
                Albuquerque, NM 87110
                (505) 884-7887

Ms. Fanelli has knowledge regarding plaintiff's job performance at the City of Albuquerque, her interactions with other employees and of the allegations in this lawsuit as set forth in the Complaint.

3.  Stephanie Yara
    c/o Deborah D. Wells, Esq.
    Kennedy, Moulton & Wells, P.C.
    2201 San Pedro N.E., Bldg. 3, Suite 200
    Albuquerque, NM 87110
    (505) 884-7887

    Ms. Yara has knowledge regarding plaintiff's job performance at the City of Albuquerque, her interactions with other employees and of the allegations in this lawsuit as set forth in the Complaint.

4.  Jesse Muniz
    c/o Deborah D. Wells, Esq.
    Kennedy, Moulton & Wells, P.C.
    2201 San Pedro N.E., Bldg. 3, Suite 200
    Albuquerque, NM 87110
    (505) 884-7887

    Mr. Muniz has knowledge regarding plaintiff's job performance at the City of Albuquerque, her interactions with other employees and of the allegations in this lawsuit as set forth in the Complaint.

5.  Lou Hoffman
    c/o Deborah D. Wells, Esq.
    Kennedy, Moulton & Wells, P.C.
    2201 San Pedro N.E., Bldg. 3, Suite 200
    Albuquerque, NM 87110
    (505) 884-7887

    Mr. Hoffman has knowledge regarding plaintiff's job performance at the City of Albuquerque, her interactions with other employees and of the allegations in this lawsuit as set forth in the Complaint.

6.  Mary Scott
    c/o Deborah D. Wells, Esq.
    Kennedy, Moulton & Wells, P.C.
    2201 San Pedro N.E., Bldg. 3, Suite 200
    Albuquerque, NM 87110
    (505) 884-7887

Ms. Scott has knowledge regarding plaintiff's job performance at the City of Albuquerque, her interactions with other employees and of the allegations in this lawsuit as set forth in the Complaint.

7.    Olivia Padilla-Jackson
      c/o Deborah D. Wells, Esq.
      Kennedy, Moulton & Wells, P.C.
      2201 San Pedro N.E., Bldg. 3, Suite 200
      Albuquerque, NM 87110
      (505) 884-7887

      Ms. Padilla-Jackson has knowledge regarding plaintiff's job performance at the City of Albuquerque, her interactions with other employees and of the allegations in this lawsuit as set forth in the Complaint.

8.    Tanda Meadors
      c/o Deborah D. Wells, Esq.
      Kennedy, Moulton & Wells, P.C.
      2201 San Pedro N.E., Bldg. 3, Suite 200
      Albuquerque, NM 87110
      (505) 884-7887

      Ms. Meadors has knowledge regarding plaintiff's job performance at the City of Albuquerque, her interactions with other employees and of the allegations in this lawsuit as set forth in the Complaint.

9.    Cindy Jaramillo
      c/o Deborah D. Wells, Esq.
      Kennedy, Moulton & Wells, P.C.
      2201 San Pedro N.E., Bldg. 3, Suite 200
      Albuquerque, NM 87110
      (505) 884-7887

      Ms. Jaramillo has knowledge regarding plaintiff's job performance at the City of Albuquerque, her interactions with other employees and of the allegations in this lawsuit as set forth in the Complaint.

10.   Any of plaintiff's medical and/or mental health providers;

11.   Any witness necessary for the authentication/admission of any exhibit;

12.   Any witness necessary for foundation, impeachment and/or rebuttal;

13.     Any witness named and/or identified by plaintiff in either the Pretrial Order or during discovery.

# X. TRIAL PREPARATION

## A.  Exhibits.

The parties must confer over all trial exhibits.  This does not apply to rebuttal exhibits that cannot be anticipated before trial.  Exhibits shall be identified no later than 15 working days before trial.  Plaintiff's exhibits shall be marked and identified on yellow labels by number and defendants' exhibits marked and identified on blue labels by letter.  Objections to exhibits shall be stated no later than 10 working days before trial.  The Rule of Evidence or legal authority upon which the objection is based shall be specified.   No later than 5 working days before trial, the parties must file: (a) a consolidated exhibit list identifying all exhibits that the parties have stipulated to be admissible; (b) a consolidated exhibit list identifying all exhibits the parties have stipulated to be authentic, but to which there are other objections; and (c) a separate contested exhibit list for those exhibits on which the parties could not reach a stipulation.  In addition, two courtesy copies of the contested and uncontested exhibit lists must be delivered to chambers.

## B.  Witness Lists.

Witnesses shall be identified in accordance with the Pretrial Order, but, in any event, no later than 15 working days before trial.  The parties shall indicate whether the witness is testifying by deposition or in person.   Objections to use of deposition testimony shall be made no later than 10 working days before trial.  The objecting party must highlight those portions of the requested deposition testimony to which the party

objects.  Plaintiff must use a yellow highlighter and defendants must use a blue highlater.  The parties must confer about any disputes and, if unable to resolve any differences, must notify the Court in writing at least 5 working days before trial.  Complete lists of witnesses to be called at trial with a brief summary of their testimony shall be filed no later than 5 working days before trial.  In addition, two courtesy copies of the witness lists must be delivered to chambers.

**C.  *Voir Dire.***

    1.  If allowed, do the parties wish to participate in *voir dire*?

        Plaintiffs  _X_ Yes  _____  No

        Defendants  _X___ Yes  _____  No

    2.  Requested *voir dire* must be exchanged between counsel and submitted to the Court no later than 5 working days before trial.  If counsel cannot agree on proposed *voir dire,* any objections must be brought to the Court's attention at least 2 working days before trial.

**D.  Jury Instructions and Verdict.**

    1.  In General.  The parties must confer about proposed jury instructions.  The Court will prepare and provide the parties with a Court-proposed set of general "stock" instructions that will be given.  The stock instructions are available from the Clerk.  The instructions that the parties must submit to the Court will be those which set forth the elements and definitions of the claims and the elements and definitions of any defenses.  The parties shall submit their proposed jury instructions no later than 10 working days before trial.

2. Sources for Instructions. If the New Mexico Uniform Jury Instructions are not applicable, the Court applies, to the extent possible, the pattern jury instructions for the Fifth Circuit Court of Appeals.

3. Submission of Proposed Instructions. The parties must submit one mutually approved set of jury instructions no later than 10 working days before trial. For those instructions the parties were unable to agree upon, each party must submit its own proposed instructions at the same time as submission of the mutually agreed instructions.

4. Form of Instructions.

(1) Submit sets of double-spaced instructions as follows:

a. A numbered original set of instructions with citations on the docket. A copy shall also be emailed to [jchproposedtext@nmcourt.fed.us](mailto:jchproposedtext@nmcourt.fed.us) in Word or WordPerfect format. The instructions shall list authority at the bottom of each instruction;

b. An unnumbered original set of instructions in Word or WordPerfect format, without citations, shall be emailed to [jchproposedtext@nmcourt.fed.us](mailto:jchproposedtext@nmcourt.fed.us);

(2) Submit no more than one instruction to a page;

(3) All deviations from pattern instructions must be identified as "modified" in the citation and the modification must be highlighted in the body of the instruction;

(4) Submit a cover sheet on all sets of instructions.

**E. Statement of Case.**

The parties must confer and submit an agreed statement of the case to the Court that will be read to the jury panel during jury selection. The statement must be submitted to the Court 5 working days before jury selection.

## XI.  OTHER MATTERS

**A.  Settlement Possibilities.**

　　1.  **The possibility of settlement in this case is considered:**

　　　　_____ Poor  __ Fair  _____ Good  _____ Excellent  __X__ Unknown

　　2.  **Do the parties have a settlement conference set with the assigned Magistrate Judge?**

　　　　_____ Yes  __X__ No  **If yes, when?**

　　3.  **Does either party wish to explore any alternatives for dispute resolution such as mediation or a summary jury trial?  If yes, please identify.**

　　Parties will be in a position to answer this after the settlement conference.

**B.   Length of Trial and Trial Setting.**

　　1.  This action is a  _____ Bench trial  _X_  Jury Trial

　　2.  The case is set for trial on a trailing docket on June 4, 2015 for call of the calendar and June 15, 2016 for jury selection.

　　3.  The estimated length of trial is  _5_ days.

## XII.  EXCEPTIONS

None.

## XIII.  MODIFICATIONS-INTERPRETATION

　　The Pretrial Order when entered will control the course of trial and may only be amended *sua sponte* by the Court or by consent of the parties and Court approval.  The pleadings will be deemed merged herein.

The foregoing proposed Pretrial Order (prior to execution by the Court) is hereby approved this 27th day of January, 2015.

*Telephonically approved 01/27/15*
CHRISTOPHER N. ORTON,
Attorney for Plaintiff
12231 Academy Rd NE
#301-304
Albuquerque, NM 87111

*/s/ Deborah D. Wells*
DEBORAH D. WELLS
Attorney for Defendants
2201 San Pedro Blvd NE, Bldg. 3, Suite 200
Albuquerque, NM  87110

Dated: _____          _____

UNITED STATES DISTRICT JUDGE